# In the United States Court of Federal Claims
No. 09-504L
(Filed: April 15, 2015)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| HUNNESHAGEN FAMILY TRUST OF JUNE 25, 1999, Individually, For Itself, and As a Representative of a Class of Similarly Situated Persons, | Rails-to-Trails Act Settlement; Class Action Settlement; Approval of Settlement As Fair, Reasonable, and Adequate; Rule 23(e). |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

J. Robert Sears and Steven M. Wald, 1010 Market Street, Suite 950, St. Louis, MO, 63102, for Plaintiffs. Thomas S. Stewart and Elizabeth G. McCulley, 2400 Pershing Road, Suite 500, Kansas City, MO 64108, for Plaintiffs.

John C. Cruden and Alison D. Gardner, United States Department of Justice, Environment and Natural Resources Division, P.O. Box 7611, Washington, D.C. 20044.

---

**OPINION AND ORDER APPROVING SETTLEMENT AGREEMENT**

---

This case arises from the federal Surface Transportation Board's issuance of a Notice of Interim Trail Use on a 17-mile long former railroad corridor running across Plaintiffs' land near Judson, Indiana and Monterey, Indiana. Plaintiffs allege that the Government's action constituted a taking of their property interests under the Fifth Amendment to the United States Constitution. To resolve all claims in this case, the parties reached an agreement that will provide Plaintiffs with the appraised fair market value of their property interests and pre-judgment interest on their claims. Class counsel will receive attorneys' fees and costs as authorized by the fee-shifting provision of the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"). See 42 U.S.C. § 4654(c) (2012).[1] The parties now ask the Court to approve this settlement.

---

[1] Generally, in the United States, each party to a lawsuit bears its own attorneys' fees and costs. See Bywaters v. United States, 670 F.3d 1221, 1226-27 (Fed. Cir. 2012). However, for

The Court gave preliminary approval to the settlement agreement on February 10, 2015, and a fairness hearing was conducted on April 8, 2015, in Lafayette, Indiana. For the reasons discussed below, the settlement of this class action is approved

## Background

**Terms of Settlement Agreement**

The present action was filed on August 3, 2009, and on October 16, 2009, the Court granted Plaintiffs' motion for class certification and the parties' joint proposed plan for providing notice to the opt-in class and appointed Plaintiffs' proposed class counsel. Beginning in 2012, the parties entered into an appraisal and settlement process for resolving the claims in this case. The proposed settlement agreement resolves the claims of all of the 55 named Plaintiffs and class members.

As part of the proposed class settlement, the Government has agreed to pay 50 Plaintiffs the fair market value of the property which they allege has been taken, based on the parties' agreed-upon appraisal of the properties.[2] The agreed-upon fair market value of the Plaintiffs' combined property interests is $278,000. The Government has also agreed to pay pre-judgment interest of $167,968.10, which has been calculated as 4.2% compounded annually based on an anticipated payment date of May 15, 2015. Consistent with the fee-shifting provision of the URA, the Government has agreed to pay $376,800 in attorneys' fees and costs, consisting of attorneys' fees of $370,000 and $6,800 in litigation expenses. As noted above, these fees and costs are authorized

---

certain types of cases, Congress has enacted statutes that shift some of the burden of paying attorneys' fees and costs from a plaintiff to a defendant. Id. The fee-shifting provision of the URA is one example. The URA states in relevant part:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c) (2012).

[2]   On April 8, 2015, during the settlement fairness hearing, class counsel represented that the settlement amounts had increased due to the parties' inadvertent failure to include the value of part of a parcel in their joint motion for preliminary approval of the settlement. The original amounts were $275,611 in compensation for Plaintiffs and $166,524.66 in pre-judgment interest.  The amount of attorneys' fees and costs was not altered.

under the "fee-shifting" provision of the URA. 42 U.S.C. § 4654(c) (2012).  Therefore, the total settlement payment is $822,768.10.  The parties have agreed and notified five Plaintiffs that they are not entitled to compensation because they did not own property along the former railway corridor at the time of the taking.

**Notice of Settlement to Class Members and the Fairness Hearing**

On February 10, 2015, the Court gave preliminary approval to the proposed settlement agreement, approved the parties' joint proposed plan for providing notice to the class members of the proposed settlement, with certain modifications, and scheduled a fairness hearing for April 8, 2015. The notice to the class members solicited written comments from the class members regarding the proposed settlement agreement and also provided that there would be an opportunity for any class member to speak at the hearing. Plaintiffs' counsel indicated that they received 46 out of 50 responses, and no Plaintiff objected to the settlement. Two Plaintiffs provided comments – one stated that he "would rather have the ground then [sic] this settlement" and that the "trail program is only going to cause trouble and problems."  Another Plaintiff stated:

> Per discussion with J. Robert Sears – subject property remains with land owner. The easement that the rail road had was transferred to Indiana Trails. The same provisions remain, that if Indiana Trails no longer uses the trail, the use of the land returns to the land owner.

The Court conducted a fairness hearing on April 8, 2015 at the United States District Court for the Northern District of Indiana, Charles A. Halleck Federal Building, 230 North Fourth Street, Lafayette, Indiana. During this hearing, the parties described the joint appraisal process, provided their rationales as to why the settlement should be approved, and answered the Court's questions.

**Discussion**

Under Rule 23(e) of the Rules of the United States Court of Federal Claims, the Court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." See Moore v. United States, 63 Fed. Cl. 781, 783 (2005) (citing In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995)). The Court has discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement, nor may it decide the merits of the case or resolve unsettled legal questions. Adams v. United States, 107 Fed. Cl. 74, 75-76 (2012) (citing Evans v. Jeff D., 475 U.S. 717, 726-27 (1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

There is no definitive list of factors that the Court must apply in considering a class action settlement. Raulerson v. United States, 108 Fed. Cl. 675, 677 (2013). However, in determining whether a settlement agreement is "fair, reasonable, and adequate," courts have found the following factors instructive: (1) the relative strengths of the plaintiffs' case compared to the proposed settlement; (2) the recommendation of counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class; (3) the

reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms; (4) the fairness of the settlement to the entire class; (5) the fairness of the proposed attorney fees; and (6) the ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity. Sabo v. United States, 102 Fed. Cl. 619, 627 (2011). The Court has considerable discretion as to what weight to afford each factor in the context of the case before it, and settlement is always favored. Id. at 627. As set forth below, these factors militate in favor of approval. The Court finds that that the joint proposed settlement is fair, reasonable, and adequate.

### The Relative Strength of Plaintiffs' Case Compared to the Proposed Settlement

In the instant case, the parties fully briefed cross-motions for summary judgment on liability. Defendant also moved to certify questions of state law to the Indiana Supreme Court as to whether railroad rights-of-way remained burdened by railroad easements pursuant to Indiana Code and whether, under Indiana law, interim trail use is within the scope of a railroad's easement. As another Judge of this Court had recently submitted similar questions of state law to the Indiana Supreme Court in an unrelated case, the Court stayed this action pending the Indiana Supreme Court's disposition of the certified questions. On March 23, 2012, the parties filed a joint notice indicating that the Indiana Supreme Court had issued a decision upon the certified questions and that the parties were open to exploring settlement. In the subsequent months, the parties reached agreement on an appraisal process and a method of determining just compensation. Although in June 2014, problems arose regarding the appraiser's reports and the interpretation of specific deeds, by September 2014, the parties represented that they had reached a tentative settlement on all issues.

As this case never reached a decision on summary judgment, this Court did not assess independently the class members' claims or the quantum. However, the parties benefited from the Indiana Supreme Court's response to the certified question and its ruling that public trail use was not within the scope of easements acquired for the purpose of operating a rail line. See Howard v. United States, 964 N.E.2d 779 (Ind. 2012).

The settlement requires Defendant to pay a large majority of the class members the full value of their damages as determined by the joint appraisal, as well as pre-judgment interest and statutory attorney's fees and costs. See Raulerson, 108 Fed. Cl. at 678. Both parties considered it in their best interests to forego the risks of litigation and pursue a negotiated settlement after the ruling of the Indiana Supreme Court. Based on the legal guidance provided by the Indiana Supreme Court and the careful and well-documented appraisals, the Court is persuaded that the strength of Plaintiffs' case warranted this expenditure of taxpayer dollars in settlement.

### The Recommendations of Class Counsel, Taking Into Account the Adequacy of Class Counsels' Representation

"[T]he professional judgment of plaintiff's counsel is entitled to considerable weight in the court's determination of the overall adequacy of the settlement." Dauphin Island Property Owners

Association, Inc. v. United States, 90 Fed. Cl. 95, 104 (2009) (quoting Nat'l Treasury Emps. Union, 54 Fed. Cl. at 797). Here, class counsel recommended settlement after effectively advocating on behalf of the class for over four years, including overseeing an extensive joint appraisal process. Additionally, class counsel capably represented their clients during this action and presented a cogent and compelling argument supporting the proposed settlement at the fairness hearing. Defendant's counsel carefully scrutinized the settlement and was actively involved in coordinating the appraisal process and conducted appropriate site visits. The recommendation of class counsel was thus informed by Defendant's counsel's active participation in the settlement process and by an in-depth analysis by an appraiser approved by Defendant. Thus, this factor favors approval.

### The Reaction of the Class Members to the Proposed Settlement, Taking into Account the Adequacy of the Notice to the Class Members of the Settlement Terms

Pursuant to the Court's preliminary approval, class counsel served class members with a detailed notice of the settlement and a list of each Plaintiffs' award or whether their claim would be dismissed. No class members objected to the proposed settlement, with only two providing comments. These comments do not contest the settlement, as one Plaintiff indicated that she understood that Indiana Trails had an easement on her land and the other generally disagreed with the rails-to-trails process. This lack of objection strongly favors approval. Dauphin, 90 Fed. Cl. at 104.

### The Fairness of the Settlement to the Entire Class

A settlement meets this factor if its relief is "uniformly available, yet simultaneously tailored to distinct groups within the class." Sabo, 102 Fed. Cl. at 629 (quoting Berkley v. United States, 59 Fed. Cl. 675, 711 (2004)). This settlement is the culmination of arms-length negotiation and appraisal. The parties retained a joint appraiser, who, pursuant to a set of instructions agreed to by the parties, appraised representative parcels and extrapolated the values of each to similar parcels within each represented group. The parties' counsels also attended a site visit with the appraiser. Each party separately viewed the appraisals and brought any questions or concerns to the appraiser, who considered them and made adjustments if warranted. After reviewing the final appraisal reports, the parties conducted arms-length negotiations.

Except for the five claimants whose claims will be dismissed because the parties agree that they do not have the requisite property interest in the former railway corridor, class members will receive the fair market value of their individual property interests based on this common appraisal process. The agreement does not single out or reward one class member over another. As such, this process was both fair to the individual class members and the class as a whole. No Plaintiff objected to the settlement agreement, indicating consent to the compensation determined by the appraisal process.

### The Fairness of the Provision for Attorney's Fees

Class counsel does not seek reimbursement of attorney's fees and or costs from Plaintiffs out of their compensation settlement award. The settlement's attorney-fee provision must also be reasonable. Dauphin, 90 Fed. Cl. at 106. Here, the Government agreed to pay $376,800 in attorneys' fees and costs, consisting of attorneys' fees of $370,000 and $6,800 in litigation expenses. As noted above, the URA provides, in Fifth Amendment cases such as this one, for the reimbursement of plaintiffs for their "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred" during the litigation, as approved by the Attorney General. 42 U.S.C. § 4654(c) (2012). In evaluating such awards, the Attorney General's opinion is entitled to deference, and the Court does not conduct the same in-depth analysis as it would if it were rendering the award. Moore, 63 Fed. Cl. at 785 n.6.

In this case, attorneys' fees did not form the basis of any objection to the settlement agreement. Taking into account the deference owed to the Attorney General in these circumstances, the Court finds that the attorneys' fees and costs provision in the settlement agreement is fair and reasonable.

### Ability of Defendant to Withstand Greater Judgment

Although the Government can "theoretically 'always withstand greater judgment because of Congresses' ability to tax' it would ultimately fall to the taxpayers to provide the necessary funds." Dauphin, 90 Fed. Cl. at 106 (quoting Berkley, 59 Fed. Cl. at 713). Therefore, as Defendant is a governmental entity, the Court does not give this factor any weight.

### Conclusion

For all of these reasons, the Court **APPROVES** the parties' proposed settlement agreement and finds that it is fair, reasonable, and adequate. The parties shall disburse payments as agreed in the settlement and shall file a notice of compliance once payment is completed. The total judgment in favor of Plaintiffs, pursuant to the parties' settlement, is $822,768.10, consisting of $278,000 in principal, $167.968.10 in pre-judgment interest, and $376,800 in attorneys' fees and costs authorized under the fee-shifting provision of the URA. 42 U.S.C. § 4654(c) (2012). The Clerk shall enter judgment accordingly. The Clerk shall also dismiss the claims of Plaintiffs Dorothy Keller, Roberta Grapel, Scott and June Morrison, Roger Timmons, and Ronald A. White.

                                                s/Mary Ellen Coster Williams
                                                **MARY ELLEN COSTER WILLIAMS**
                                                **Judge**